IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND


ROY RIPPEON                        *
                                   *
v.                                 *
                                   *   Civil No. WMN-10-1225
FREDERICK COUNTY BOARD OF          *
EDUCATION et al.                   *
                                   *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

                           **MEMORANDUM**

    Before the Court is Defendants' Motion to Dismiss

Plaintiff's Complaint.  Paper No. 6.  The motion is fully

briefed.  Upon a review of the motion and the applicable case

law, the Court determines that no hearing is necessary, Local

Rule 105.6, and that the motion should be granted in part and

denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff Roy Rippeon was employed as an electrician for

Frederick County Public Schools (FCPS) from 1999 until the

termination of his employment in July of 2008.  Plaintiff

alleges that he was terminated for going to the news media about

certain fraudulent practices of his fellow employees.  Plaintiff

states that he had observed coworkers, along with his

supervisor, Defendant Robert Johnson, falsifying time sheets and

engaging in similar fraudulent practices.  When he took his

concerns to Defendant Robert Wilkinson, the director of his

department, as well as others in the FCPS system, they refused to take any action. Instead, Defendant Johnson and others began to accuse Plaintiff of insubordination, threatened sanctions against him, and ordered him to stop making further accusations.

Plaintiff then contacted a local television station and reported the fraud on the taxpayers that he believed was being perpetrated. Shortly thereafter, on July 9, 2008, a reporter from the station contacted Defendant Robert Hagans, the Senior Human Resource Manager for FCPS, requesting an interview to discuss Plaintiff's allegations of wage fraud. Within three hours of Defendants Hagans and Wilkinson learning of the reporter's request, Wilkinson sent an email to Hagans recommending that Plaintiff's employment be terminated. Compl. ¶ 27. On July 24, 2008, Hagans sent Plaintiff and Defendant Frederick County Board of Education (the Board) a formal correspondence terminating Plaintiff and giving insubordination as the reason for that termination.

Plaintiff appealed his termination to Defendant Linda Burgee, the Superintendent of FCPS, on August 6, 2008. Burgee denied his appeal, and Plaintiff avers that she never considered any of his arguments and that the appeal process was a "sham." Id. ¶ 33. On December 19, 2008, Plaintiff filed an appeal of Burgee's decision to the Board, and that appeal was also denied after what Plaintiff describes as a "bogus" process. Id. ¶ 34.

2

Plaintiff filed the instant action in this Court asserting five causes of action: a violation of his federal constitutional rights under 42 U.S.C. § 1983 (Count I); a breach of contract (count IV); and three tort claims - defamation (Count II), wrongful discharge (Count III), and civil conspiracy (Count V). Defendants have moved to dismiss the complaint in its entirety. In responding to the motion, Plaintiff conceded that the tort claims must be dismissed based upon his failure to comply with the provisions of Maryland's Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-301 et seq.

**II. LEGAL STANDARD**

Defendants caption their motion as a "Motion to Dismiss" and state that it is being brought "pursuant to Rules 12(b)(1) and (12)(b)(6) of the Federal Rules of Civil Procedure." Mot. at 1. While Defendants attach some exhibits to their motion, and include a brief paragraph in their memorandum discussing the legal standard for a motion for summary judgment under Rule 56,[1] see Defs.' Mem. at 3, they never explicitly ask that the Court convert their motion into one for summary judgment. Thus, the

---

[1] Although Defendants invoke Rule 12(b)(1) in their motion's preamble, they do not include a legal standard for a Rule 12(b)(1) motion in their memorandum.

Court is going to treat the motion simply as a motion to dismiss under Rule 12.[2]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a

---

[2] Were the Court to convert the motion into one for summary judgment, it would still, most likely, be denied. Plaintiff attaches some of his own exhibits to his opposition and from those counter exhibits it would appear that there is a genuine dispute as to many of the material facts in this action, on the current record. The Court is also reluctant to convert this motion as the record is insufficiently developed. Were Defendants to have moved for summary judgment, Plaintiff could have responded with a motion pursuant to Rule 12(d) to defer consideration of the motion until he had the opportunity to take discovery, which the Court would likely have granted. Finally, as highlighted below, the briefing of the relevant legal issues in the papers before the Court is deficient to a degree that adds to the Court's reluctance to reach the merits of Defendants' entitlement to summary judgment.

4

claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

**III. DISCUSSION**

Section 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law. 42 U.S.C. § 1983. For the purpose of this motion, "Defendants will assume that they are all state actors, acting under the color of law." Mot. at 5.[3] As for the constitutional rights that were allegedly violated, Plaintiff points to two: a First Amendment right to free speech and a Fourteenth Amendment right to due process.

Defendants' primary argument for dismissing Plaintiff's § 1983 claim based upon the alleged violation of his First

---

[3] While Defendants seem to allow that all Defendants could potentially be held liable under § 1983, see Memo. at 5, a municipality or division of a municipality such as the Board would not typically be liable under this provision, absent a pattern or practice of constitutional violations. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). Plaintiff has not included allegations that would give rise to § 1983 liability on the part the Board. Accordingly, the § 1983 claim against the Board will be dismissed.

5

Amendment rights is somewhat difficult to understand. Defendants posit, "in determining whether the Plaintiff can establish a violation of the First Amendment, the necessary elements of a substantive due process claim are that: 1)the claimant had a property interest/right in his employment, and 2) the public employer's termination of that interest was arbitrary and capricious." Memo. at 5 (citing as authority this Court's opinion in Whittington v. City of Crisfield, 2006 WL 4146487 (D. Md. Feb. 23, 2006)). Defendants provide no explanation as to why, when discussing what must be alleged to state a First Amendment claim, they shift mid-sentence to a discussion of the elements of a substantive due process claim. While Whittington did involve a public employee's claim that his First Amendment rights were violated, the portion of the opinion cited by Defendants was addressing a separate substantive due process claim. Contrary to Defendants' suggestion, a public employee need not establish a property interest in continued employment to establish a First Amendment violation.

The actual elements that a public employee must establish to state a claim for deprivation of First Amendment rights flowing from an adverse employment action are the following: 1) "the speech at issue must relate to matters of public interest;" 2) "the employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the

workplace;" 3) "the employee must establish retaliation of some kind-that he was deprived of a valuable government benefit or adversely affected in a manner that, at the very least, would tend to chill his exercise of First Amendment rights;" and 4) "the employee must establish a causal relationship between the protected expression and the retaliation: that the protected speech was a 'substantial factor' in the decision to take the allegedly retaliatory action." <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 351-52 (citations and internal quotations omitted).

Reviewing the Complaint for these elements, the Court concludes that Plaintiff has stated a First Amendment claim. Defendants make no argument as to the first three. As to the fourth element, the allegation that the decision was made to fire Plaintiff within three hours of learning that Plaintiff spoke to the press is sufficient to give rise to a reasonable inference of causality, at least at this stage of the litigation. This is particularly true considering the allegations of other adverse actions taken in reprisal for Plaintiff's speaking out on this issue. The counter-arguments offered by Defendants addressing this fourth element are premised on evidence submitted with their motion, not

allegations in the Complaint. As Defendants have not moved for summary judgment, the Court cannot consider that evidence.[4]

Turning to Plaintiff's due process claim, Defendants assume Plaintiff is bringing a <u>substantive</u> due process claim. Memo. at 5-6 and 9. The Court, however, must assume it is a <u>procedural</u> due process claim. Plaintiff alleges that Defendants "violated his Fourteenth Amendment right to due process, by not providing notice of the termination, nor providing a hearing for [Plaintiff] to dispute the false accusations." Compl. ¶ 32. Deprivation of a property interest without notice and hearing is a procedural due process violation, not a substantive due process violation. <u>See generally</u>, <u>Spell v. McDaniel</u>, 591 F. Supp. 1090, 1105-06 (4th Cir. 1984).

While imprecisely categorizing Plaintiff's Fourteenth Amendment claim, Defendants are correct that, in order to prevail on his due process claim, Plaintiff must demonstrate that he had a property interest in continued employment.[5] <u>See</u>

---

[4] Again, were the Court to consider that evidence, along with the evidence submitted by Plaintiff, it would likely find genuine disputes of material facts on this issue.

[5] Defendants mischaracterize the Complaint as asserting a property interest in "lifetime employment." Memo. at 6 ("The expectation of lifetime employment is the only property interest presented pursuant to Plaintiff's § 1983 claim"); Reply at 1 ("Plaintiff must prove that he has a Constitutional property interest in lifetime employment."); <u>id.</u> at 2 (stating that Plaintiff alleged "a Constitutional property interest to lifetime employment"). Plaintiff never asserted an

8

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). Here, Plaintiff has alleged that the "rules, policies, and procedures governing [Plaintiff's] employment required a formal complaint, investigation, findings, and other administrative procedures before defendants could terminate [him]." Compl. ¶ 42.[6] While, under Maryland law,[7] employees are presumed to be at-will employees with no property right in continued employment, Maryland courts have recognized an exception to that conclusion where rules or policies provide restrictions on the discharge of an employee. See Staggs v. Blue Cross of Md., Inc., 486 A.2d 798, 803 (Md. Ct. Spec. App. 1985) (holding that an employee handbook may, in some circumstances, become a unilateral contract, modifying employee's at-will status); Elliott v. Bd. of Trs. of Montgomery Co. Cmty Coll., 655 A.2d 46, 49 (Md. Ct. Spec. App. 1995)

---

unconditional right to lifetime employment, but simply stated that he "had more than a mere at will employment." Compl. ¶ 42.

[6] While not properly before the Court on a motion to dismiss, Plaintiff submitted with his opposition a copy of a portion of the Board's employment policies that state that "due process will be provided in the administration of the discipline policy." Pl.'s Ex. 1.

[7] The Court looks to state law to determine whether a plaintiff had a property interest in his employment. Bishop v. Wood, 426 U.S. 341, 344 (1976).

9

(same); Hrehorovich v. Harbor Hosp. Ctr., 614 A.2d 1021, 1032 (Md. Ct. Spec. App. 1992) ("[P]ersonnel policies may give rise to contractual rights if they are properly expressed and communicated to the employee in a fashion that creates a reasonable basis for the employee's reliance on the provisions."). Where a plaintiff has alleged the existence of rules and procedures that justify his claim of entitlement to continued employment absent sufficient cause, he "must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.'" Perry v. Sindermann, 408 U.S. 593, 603 (1973).

Plaintiff relies upon the same rules, policies, and procedures in support of his breach of contract claim, asserting that they created a valid enforceable contract with Defendants whereby Plaintiff could only be fired for cause. Compl. ¶ 57. The cases cited above in support of Plaintiff's due process claim also support this breach of contract claim. See Staggs, 486 A.2d at 803 ("[W]e hold that provisions in such policy statements that limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee."); Hrehorovich, 614 A.2d at 1031 ("In Maryland, an at-will employee

may maintain an action for breach of an implied employment contract if existing general personnel policies or procedures limit the employer's discretion to terminate an employee.") Thus, Defendants' motion to dismiss will be denied as to this claim as well.

A separate order will issue.

                                           _____/s/_____
                                           William M. Nickerson
                                           Senior United States District Judge

DATED: September 9, 2010